CITY OF WAYCROSS *v.* BELL *et al.*

No. 6867. SEPTEMBER 17, 1929.

*D. M. Parker*, for plaintiff in error.

*Parks, Reed & Garrett*, contra.

RUSSELL, C. J.  In January, 1928, the City of Waycross adopted an ordinance to levy and collect specific and occupation taxes for the city for the year ending January 15, 1929.  This ordinance was the general tax ordinance of the city for the year 1928, and included the levy of ad valorem taxes on real estate and personal property.  The ordinance provides that no person shall engage in or carry on any business therein described, without first making application for a license and paying for the same and receiving a license to carry on the specified business, and provides a penalty of punishment by fine or imprisonment for failure to pay the tax and receive the license, for the issuance of an execution to collect the tax, and for an increase in the amount of tax by 25 per cent. if the same is not paid on or before February 15, 1928. In this ordinance a tax upon "automobile bus lines conveying persons and parcels into and out of the City of Waycross" is levied according to the capacity of the bus, as follows: "1 to 5 passengers, $50; 5 to 10 passengers, $100; 10 to 20 passengers, $150; above 20 passengers, $200." The plaintiffs filed a petition in which they alleged the foregoing facts, and further set up that they are engaged in the operation of motor-buses for the transportation of passengers upon regular fixed routes into and out of the City of Waycross, and that the municipality has demanded of plaintiffs payment of the "license or occupation taxes on the motor-buses operated by them" at the rate fixed by the ordinance; that if petitioners fail to pay such taxes they will be arrested and punished by fine or imprisonment, and executions will be issued against them for the amounts claimed; that the municipality is without any power or authority to impose or collect said taxes from petitioners, for the reason that by express provision of the law of Georgia petitioners are exempt from any local municipal license tax.  Unless the City of Waycross is restrained from attempting to enforce the terms of the ordinance against petitioners, they will be subjected to repeated arrests and prosecutions; their property will be levied upon, and they will be subjected to great expense and inconvenience of defending numerous criminal prosecutions

and of defending themselves and their property in the courts against sales under executions. Petitioners have large amounts of money invested in the motor-buses which they operate, and the effect of said prosecutions and levy of executions will injure and destroy their said property, and will prevent them from pursuing a useful and legitimate occupation and business. They pray that the city be enjoined from making any effort to collect the tax from them and from interfering in any way with them in the operation of their motor-buses.

By amendment the plaintiffs set up that the ordinance levying the tax in question is void, because it is in violation of art. 7, sec. 2, par. 1, of the constitution of Georgia, providing that taxation shall be uniform on the same class of subjects; that there are three steam-railroad lines engaged in conveying persons into and out of the City of Waycross, the same business in which plaintiffs are engaged; that no occupation tax is imposed by the city on the railroads, and the tax imposed on plaintiffs is discriminatory against them and in favor of the railroads; that one of the plaintiffs is engaged in interstate commerce, and as to that plaintiff the ordinance is void because it violates the interstate-commerce provision of the Federal constitution, art. 1, sec. 8, par. 3. The defendant municipality filed a demurrer to the petition, moving to dismiss the action, because (1) No cause of action is set forth. (2) The petition does not set out any matter or thing of equity or equity jurisdiction. (3) The petition sets out no cause of action or matter for equitable relief against the defendant. In its answer the defendant admits the allegations of fact contained in the petition, but denies that the municipality is without power to levy and collect the taxes in question; and sets up that the tax it is undertaking to collect from the petitioners is a legal occupation or business tax which it is entitled to assess and collect. At the hearing before the trial judge it was agreed by counsel for the parties that no question of fact was involved, and that the only question for the court to determine was whether the tax sought to be imposed upon the petitioners by the ordinance was legal. The judge overruled the demurrer, and enjoined the City of Waycross from attempting to collect "the license or occupation taxes upon automobile bus lines operated by petitioners into and out of Waycross, Georgia, under the terms of the present ordinance of said

city, either by arrest or issuance of executions." The defendant excepted.

Paragraph 75 of section 2 of the general tax act of 1927 (Ga. L. 1927, pp. 56, 80) imposes a tax "Upon every person, firm, or corporation, operating a motor-bus for the transportation of passengers upon a regular or fixed route, [of] $25 for each bus of a passenger capacity of seven or less, and on each bus of more than said capacity the sum of $50; provided, that they shall be exempt from local municipal license tax; provided further, that this section shall not apply to passenger buses transporting school children exclusively." Counsel for the City of Waycross contends that the exemption contained in the general tax act, supra, extends no further than to prevent municipalities of Georgia from collecting a fee for the licensing of the bus business, and does not prevent the assessment and collection of an occupation tax upon "bus lines." Based upon this assumption, the argument is made that as the municipal tax in question is plainly a revenue measure, and not a matter of regulation, therefore the tax is not a "license tax" imposed by the municipality in contravention of the general tax act. The first question to be considered is whether the City of Waycross, which is admitted to possess authority to assess and collect occupational taxes in general, was prohibited by the general tax act of 1927, supra, from assessing and collecting a business or occupational tax upon automobile bus lines carrying passengers into or out of the city. The municipality contends that the tax in question is not prohibited by the terms of the general tax act, while the defendants in error rely upon the proviso contained in paragraph 75 of such act as an exemption from the municipal tax sought to be imposed. The exemption provided by section 75 of the tax act for the "person, firm, or corporation, operating a motor-bus for the transportation of passengers upon a regular or fixed route" is from "local municipal license tax."

Though there is a clear distinction between a license granted or required as a condition precedent before a certain business or occupation can be carried on and a tax assessed on the occupation or business in which such license may authorize one to engage (*Home Ins. Co.* v. *Augusta,* 50 *Ga.* 530; see also *Peginis* v. *Atlanta,* 132 *Ga.* 303, 63 S. E. 857, 35 L. R. A. 716), the term "license tax," as employed in the tax act of 1927, is sufficiently broad to include

both a charge imposed under the police power for the privilege of obtaining a license to conduct a particular business, and a tax imposed upon a business for the sole purpose of raising revenue. "Every 'license tax' is imposed for raising revenue or as a police regulation, or for both purposes." Johnson v. Great Falls, 38 Mont. 369. (99 Pac. 1059, 16 Ann. Cas. 974). "A 'license tax' is 'either a license strictly so called, imposed in the exercise of the ordinary police power of the State, or it is a tax laid in the exercise of the power of taxation.'" City of Montgomery v. Kelley, 142 Ala. 552 (38 So. 67, 70 L. R. A. 209, 110 Am. St. R. 43), citing Tiedeman on Police Power. The term "license tax," as employed in the authority granted by the charter of the City of Macon, empowering the city "to levy and collect a license tax upon all persons exercising any profession, trade, or calling in said city," was held by this court to "have relation strictly to the power of taxation, and not to that of police regulation," the court adopting the view of the Supreme Court of Kansas in Fretwell v. Troy, 18 Kan. 271, "in which it was held that power to levy and collect a 'license tax' on specified occupations 'was designed for purposes of revenue rather than of police 'regulation.'" Morton v. Macon, 111 Ga. 162, 164 (36 S. E. 627, 50 L. R. A. 485). A similar ruling is contained in the decision in Daus v. Macon, 103 Ga. 774, 778 (30 S. E. 670). In Brown-Forman Co. v. Kentucky, 217 U. S. 563 (30 Sup. Ct. 578, 54 L. ed. 883), the term "license tax" is treated as synonymous with "occupation tax." "A 'license tax' is one imposed on the privilege of exercising certain callings, professions, and avocations . . ." State v. Berryman, 142 Mo. App. 373 (127 S. W. 129). It is stated by Tiedeman (Limitation on Police Power, 271), that "When the power is exercised by municipal corporations, a license is the requirement, by the municipality, of the payment of a certain sum by a person for the privilege of pursuing his profession or calling, whether harmful or innocent, for the *general* purpose of producing a reliable source of revenue." If the occupation is harmful, the sum paid for its prosecution may be said to be a license fee; but if innocent, it is a license tax. St. Paul v. Traeger, 25 Minn. 248, 33 Am. R. 462; Chilvers v. People, 11 Mich. 49. See also City of New York v. R. Co., 32 N. Y. 261. "A 'license fee' or as it is otherwise called a 'license tax,' the two terms generally being regarded as

synonymous, since the requirement of payment for a license is only a mode of imposing a tax on the licensed business, is a sum exacted for the privilege of carrying on a particular occupation or business." 37 C. J. 168, § 3.

Construed in the light of the foregoing rulings, it is evident that the General Assembly intended to relieve those engaged in the specified business or occupation from "municipal license tax," and thereby the municipality was forbidden to impose either a license fee or license or occupation tax upon the business of the defendants in error; and that portion of the tax ordinance of the municipality attempting to impose a tax upon the businesses exempted from municipal taxation by the General Assembly was ineffectual and invalid. The ordinance of the municipality must yield to the higher authority of the legislature of the State. Having held that the plaintiffs were not subject to the provisions of the tax ordinance, by reason of the exemption contained in the general tax act of the legislature, under the well-settled rule that this court will abstain from passing on constitutional questions where such decision is not necessary in the adjudication, we shall not deal with the attacks made by the defendants in error upon the constitutionality of the tax ordinance now in question. *McGill* v. *Osborne,* 131 *Ga.* 541 (2) (62 S. E. 811), and cit.; *Carter* v. *Dominey,* 157 *Ga.* 167 (121 S. E. 236); *Hoover* v. *Pate,* 162 *Ga.* 206 (132 S. E. 763); *Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (149 S. E. 211).

It follows from the foregoing rulings that the trial judge did not err in enjoining the municipality from proceeding to collect the tax in question.

*Judgment affirmed. All the Justices concur, except*

GILBERT, J., dissenting. A clear statement of the case appears preceding the opinion by the majority of the court. From this statement I am convinced that the court erred in refusing to sustain the general demurrer to the petition. In brief, the petition seeks the extraordinary powers of equity to stay the progress of a municipal government in the exercise of its powers of taxation. The petition is filed by several persons; that is, the attack is "en masse." It seeks to enjoin (1) the arrest of criminal prosecutions for violation of the ordinance in question, and (2) the issuance of executions against petitioners to collect the taxes sought to be im-

posed. The petition alleges that the tax ordinance is invalid, because (1) it is in violation of the general tax act (Ga. Laws 1927, p. 56, 80), and (2) it is unconstitutional, because in violation of designated portions of the constitution. No execution has been issued against any of the petitioners for the purpose of enforcing the tax. No arrests have been made, and no threats of arrests. It is sought to enjoin these anticipated proceedings. It is merely alleged, that, unless the city is restrained from attempting to enforce the ordinance, "these petitioners will be subjected to repeated arrests and prosecutions, . . and the property of these petitioners will be levied upon under executions against them, and these petitioners will be put to the great expense and inconvenience of defending numerous criminal prosecutions and of defending themselves and their property in the courts against sales under executions. Petitioners have large amounts of money invested in the motor-buses which they operate, and the effect of the prosecution of petitioners and of the issuance and levy of executions against petitioners will injure and destroy the property of petitioners, will deprive them of the legitimate enjoyment of their property, and will prevent them from pursuing a useful and legitimate occupation and business." These allegations, according to the general rule, must be construed most strongly against the pleader; but, without applying this rule, it is obvious that the pleader did not intend to convey the idea that any execution had already been issued or levied, or that any petitioner had been arrested. The meaning is plain that the pleader is expressing a conclusion only. Had it been otherwise, facts would have been stated; the pleader would not have omitted allegations so important as the statement of facts which would have been so powerful or so persuasive upon the court, as that executions had been issued and levied and sales of property imminent, or that petitioners had been arrested and were in danger of incurring fines or suffering imprisonment. Regardless, therefore, of all other questions entering into the issue of the validity of the tax ordinance, the court should have sustained the general demurrer to the petition.

Of course the City of Waycross is not insolvent, nor would the payment of the small amount of tax imposed constitute irreparable damage. There is a line of decisions by this court to the effect that where an ordinance is absolutely void, because in conflict with

the constitution, it amounts to no law at all, and in such case a court of equity will assume jurisdiction to enjoin its enforcement. *City of Atlanta* v. *Jacobs,* 125 *Ga.* 523, 528 (54 S. E. 534); *Green* v. *Hutchinson,* 128 *Ga.* 379 (57 S. E. 353). But such procedure is applied where there are other facts which will justify the jurisdiction of equity, for instance, where the defendant is insolvent, or the damages will be irreparable, or where from any other circumstances the petitioner has not a complete and adequate remedy at law, and where the petition shows facts to exist which justify and call for the exercise of extraordinary powers, and not where the petitioner is merely alarmed because of the apprehension of loss or damage. The tax, if paid under an invalid ordinance, under protest, could be recovered. If that procedure was not deemed desirable, the petitioners could have filed to the levy of the tax execution an affidavit of illegality; for the charter of the City of Waycross provides for that procedure. Ga. Laws 1909, p. 1491 § 41. A long line of decisions of this court, together with the provisions of the Civil Code (1910), § 5491, makes it certain that equity will not interfere to enjoin a criminal prosecution, even in the instance of repeated arrests or multiplicity of suits; for if it were otherwise, enforcement of criminal laws of the State could be indefinitely delayed. Moreover, it would be especially unthinkable for a court of equity to enjoin a criminal prosecution where no arrests had been threatened or made. If it were otherwise, any person, not himself involved, but acting as a shield for another, might go into a court of equity and ask that a criminal statute be declared void, and that public officers be enjoined from undertaking to enforce it. For a general discussion of this phase of the question and an imposing array of decisions of this court, reference is made to *Georgia Railway & Electric Co.* v. *Oakland City,* 129 *Ga.* 576 (59 S. E. 296), and cit. See also the dissenting opinion in *Town of Lilburn* v. *Alford,* 163 *Ga.* 285 (136 S. E. 65).

This case was submitted to the court on the pleadings, no evidence being offered. The allegations of the petition and the answer of the defendant municipality merely join issue on an abstract legal question. A court of equity should not exercise its extraordinary powers where there is no grave danger of impending injury. Bare fears of injury will not authorize such action. *Elam*

v. *Elam,* 72 *Ga.* 162 (2). "Injunction is extraordinary process, and the most important one which courts of equity issue. It is well denominated 'the strong arm of equity.' The writ 'is not ex debito justitiæ for an injury threatened or done to the estate or rights of a person; but the granting [of] it must always rest in sound discretion, governed by the nature of the case.' Enfield Toll Bridge Co. *v.* Conn. River Co., 7 Conn. 50. As is said in another case: 'Injunction is not of right but of grace; and to move an upright chancellor to interpose this strongest arm of the law he must have not a sham case, but a well-grounded complaint, the bona fides of which is unquestioned, or capable of vindication, if questioned.' Sparhawk *v.* Union Pass. Ry. Co., 54 Pa. 454. 'There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or [is] more dangerous in a doubtful case, than the issuing [of] an injunction.' Bonaparte *v.* Camden & A. R. Co., Baldw. 218 Fed. Cas. No. 1,617." Cullman Property Co. *v.* Hitt Lumber Co., 201 Ala. 150 (77 So. 574, 577).

It may be argued, however, that, notwithstanding all that has been said to the contrary, a court of equity will intervene, because the attack on the ordinance is "en masse." This court has said that equity will intervene to avoid a multitude of suits by establishing a right in favor of or against several persons which is likely to be the subject of legal controversy. In *Smith* v. *Dobbins,* 87 *Ga.* 303 (13 S. E. 496), this court has ruled: "Where several executions in favor of different plaintiffs have been levied on the same property, and one person has filed, in resistance to each levy, a separate claim, and the claim cases thus made are pending in court, all involving the same question, and it being one upon the decision of which the subjection or non-subjection of the property to all the executions depends, an equitable petition will lie in favor of the claimant against all the plaintiffs jointly, to bring to trial all of the claims together, and dispose of them by one verdict and judgment." This has been followed in a number of cases. However, the reply to that argument is that not one of the petitioners in this case has been arrested in any criminal proceeding, and not one of them shows any impending injury due to the issuance and levy of any execution on his or its property. Therefore, the dangers being purely fanciful, or bare fears, and the statement in the

petition being merely a conclusion, the jurisdiction of equity will not intervene because a number of persons instead of one have expressed such fear or apprehension. If it were otherwise, the jurisdiction of equity could be invoked at any time against any law of the State of ordinance of any city where no citizen has been molested civilly or criminally, merely by joining several persons as petitioners. It may be argued that when the answer is considered, the intention of the municipality to enforce the ordinance as alleged in the petition is sufficiently shown. The reply to this is, first, that the answer only admits such facts as are properly and legally pleaded in the petition. In the present case the allegations as to criminal prosecutions and the sale of property are alleged merely as conclusions. In fact, the prayers make absolutely certain that no executions have been issued, and therefore no sales were contemplated, and that no arrests had been made. Secondly, the court rendered a judgment formally overruling the demurrer, and error is duly assigned on that judgment in the bill of exceptions, it being insisted therein that if the court had rendered a judgment sustaining the demurrer it would have been a final disposition of the case. Of course the admissions in the answer can not be relied upon to aid the petition against the attack of the demurrer. This dissent is meant to consider only the assignment of error with regard to overruling the demurrer. If the court erred in that judgment, all subsequent proceedings were nugatory. For these reasons the writer feels compelled to dissent from the judgment rendered by his learned associates.