INTER-CITY COACH LINES INC. *v.* HARRISON,
Comptroller-general, *et al.*

No. 7807.    FEBRUARY 27, 1931.

*Carl N. Davie, J. F. Kemp,* and *Lawrence S. Camp,* for plaintiff.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general, Robert B. Troutman, J. P. Wilhoit,* and *Robert S. Sams,* for defendants.

HINES, J.   Prior to June 7, 1929, the Inter-City Coach Lines Inc. operated motor-buses between the City of Atlanta and the City of Fairburn, and since said date has continuously operated buses from Atlanta to College Park, and since that date has maintained and is maintaining, by the operation of one bus, an hourly schedule between College Park and Fairburn.   By an amendment to the general tax act of 1927, which amendment was approved August 29, 1929, it is provided that "There shall be collected by the Comptroller-general from every auto-transportation company, association, or individual, as defined hereinafter, to which has been granted a certificate of public convenience and necessity, which it or they are hereby required to obtain from the Public-Service Commission of this State, permitting him, it, or them to engage in the transportation of passengers or freight, or both, between fixed termini, an occupation tax on a mileage basis of one quarter (1/4) cent per mile on all buses with a capacity of 10 passengers

or less, and a mileage tax of one half (1/2) cent per mile on all buses with a capacity of not more than 20 passengers nor less than 10 passengers, and a mileage tax of three quarters (3/4) cent per mile on all buses with a capacity of more than 20 passengers, . . coming within the terms of this act, for every mile traveled by the motor-vehicles of such auto-transportation company, association, or individual, over the public highways of this State." The amending act then provides the method by which said tax shall be collected. Acts 1929, pp. 58, 74. In 1929 the General Assembly passed the motor-carrier act of that year. Acts 1929, pp. 293, 302. By its terms this act became operative October 1, 1929. Section 4(a) of this act provides, that, after it goes into effect, no motor carrier shall operate without first obtaining from the Public-Service Commission a certificate of public convenience and necessity; and section 16 provides that a fee of $35 shall be charged for the issuance by the commission of every such certificate. Section 17 provides that every motor carrier shall, as soon as a certificate is issued, and annually on or before each succeeding January 1, as long as such certificate remains in force, make application to the commission for registration and license of the motor-vehicles to be operated under such certificate, and, upon the payment of a fee of $25 for each vehicle to the Comptroller-general, shall be entitled to register the same and receive a license therefor. Section 19 declares that "No county, municipality, or other political subdivision of this State, shall impose any regulation, license, or operating fee or tax of any kind on any motor carrier licensed under this act; and this shall be the only license or operating tax imposed upon any motor carrier by this State." By section 2 of this act it is expressly declared that it shall not apply to "motor-vehicles operated exclusively within the incorporated limits of cities or towns."

The act of Congress of November 9, 1921, declares that all highways constructed or reconstructed under its provisions shall be free from tolls of all kinds. U. S. C. A. title 23, § 9. The highway over which this company operates its lines of buses is a Federal-aid highway. The Inter-City Coach Lines Inc. paid the tax imposed by the above amendment to the general tax act of 1927 from the date thereof until October 1, 1929, when the motor-carrier act went into effect. This company likewise made application to the

Public-Service Commission for a certificate of public convenience and necessity, in order to operate its bus business as above set out, received such certificate, and paid the taxes and license fees required under the latter act. The Comptroller-General, in January, 1930, made a demand upon this company for the payment of the mileage tax imposed by the amendment to the general tax act of 1927, and threatened to issue execution and enforce the collection of the same against it unless payment was received by February 1, 1930. This company filed its petition against the Comptroller-General and the Georgia Public-Service Commission in which it sought to enjoin the former from enforcing or attempting to enforce the tax imposed by the above amendment to the general tax act of 1927, except the tax due on the line which operates between the limits of the city of College Park and Fairburn, and to enjoin the Public-Service Commission from enforcing or attempting to enforce its rules and regulations as to the operation of the motor-bus lines of plaintiff, except between the above limits. The judge declined to grant an interlocutory injunction; and to this judgment this company excepted.

■ Plaintiff insists that the above amendment to the general tax act of 1927 is inoperative, as it undertakes to impose the tax therein provided upon "every auto transportation company, association, or individual, as defined hereinafter," and fails therein to define the auto-transportation companies, associations, or individuals upon whom the tax is so imposed, whereby it is impossible to know what carriers are included within its terms. A casual reading of the amendment to the general tax act of 1927 will show that this contention is without merit. It clearly applies to every auto-transportation company, association, or individual to which or to whom has been granted a certificate of public convenience and necessity by the Public-Service Commission, permitting the applicant to engage in the transportation of passengers or freight, or both, for hire over the public highways of this State between fixed termini. It therefore appears clearly that the corporations or persons subject to this tax are thus clearly defined.

■ It is further insisted that the act, which embodies the amendment to the general tax act of 1927, is unconstitutional and void, because it contains matter different from what is expressed in its title. The title of this act is. "An act to amend an act approved

August 25, 1927, known as the general tax act, and to amend paragraph 84 of section 2 of the same, and to amend the same by adding thereto the following paragraphs hereinafter set forth, and to amend the same by striking therefrom certain paragraphs and substituting other paragraphs therefor; and for other purposes." The constitution of this State does not require that the title of an act should contain a synopsis of the law proposed, but that the act should contain no matter variant from the title. *Martin* v. *Broach, 6 Ga.* 21, 27 (50 Am. D. 306). The general object of the law is all that need be indicated in the title. *Howell* v. *State,* 71 *Ga.* 224 (51 Am. R. 259); *Fullington* v. *Williams,* 98 *Ga.* 807 (27 S. E. 183); *Welborne* v. *State,* 114 *Ga.* 793 (40 S. E. 857). Details may be omitted. *Banks* v. *State,* 124 *Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007). The constitutional provision upon this subject should be given a liberal construction. Titles to acts exceedingly brief and general have been held sufficient. *Brown* v. *State,* 73 *Ga.* 38; *Plumb* v. *Christie,* 103 *Ga.* 686 (30 S. E. 759, 42 L. R. A. 181). Provisions germane to the general subject-matter embraced in the title of an act, which are designed to carry into effect the purposes for which it is passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by use of the words, "and for other purposes." *Banks* v. *State,* supra; *Wright* v. *Fulton County,* 169 *Ga.* 354 (150 S. E. 262). Here the title declares that the act is to amend the general tax act of 1927. It then states that it proposes to amend that act by striking out certain paragraphs and adding new paragraphs, and then declares that it intends to cover other purposes. Clearly under such a caption the legislature could amend the general tax act of 1927 by adding any amendments germane to the subject of taxation. It seems clear, both from authority and reasoning, that this act is not unconstitutional for the reason assigned.

■ It is next urged that the act amending the general tax act of 1927, and imposing upon motor carriers the mileage occupation tax thereby provided, has been superseded and repealed by certain provisions of the motor-carrier act of 1929, imposing a tax for a certificate of public convenience and necessity and another tax for the registration and license of motor-buses, the terms of which are fully set out above. The act amending the general tax act of 1927 and the motor-carrier act were both approved on August 29, 1929.

The former act was first passed by the General Assembly; and it may be fairly inferred that it was approved by the Governor prior to the approval of the motor-carrier act. So if there is any irreconcilable conflict between the act amending the general tax act of 1927, imposing a mileage occupation tax upon the operators of buses between fixed termini over the highways of this State, and the motor-carrier act imposing taxes upon such operators for certificates of public convenience and necessity and for the registration and license of the motor vehicles of such operators, then the provisions of the former act imposing the mileage tax must yield to the provisions of the motor-carrier act. Does such irreconcilable conflict exist? As we have seen, both of these acts were passed by the same legislature, nearly at the same time, and both were approved upon the same day. "The rule that statutes in pari materia should be construed together applies with peculiar force to statutes passed at the same session of the legislature; it is presumed that such acts are imbued with the same spirit and actuated by the same policy, and they are to be construed together as parts of the same act." 25 R. C. L. 1006. It is a well-recognized rule of statutory construction that a subsequent statute will not repeal a former one if the two can be reconciled. *Sampson* v. *Brandon Grocery Co.*, 127 *Ga.* 454, 456 (56 S. E. 488, 9 Ann. Cas. 331). It is the duty of courts, whenever possible, to construe acts passed by the same legislature, and approved at the same time, so as to make both valid and binding, and to give effect to all the terms of both, so as to make them capable of enforcement.

It is insisted that the fee or tax paid by the motor carrier for a certificate of public convenience and necessity, and the tax paid by the motor carrier for registration and license, both taxes being imposed by the motor-carrier act, are occupation taxes; and that these taxes being imposed by the motor-carrier act, which was enacted subsequently to the above amendment to the general tax act of 1927, which imposed the mileage occupation tax on the operators of buses between fixed termini on the public highways of this State, superseded the occupation tax imposed by the prior act.

Were the taxes imposed by the motor-carrier act occupation taxes, or were they license taxes? The object of a license is to confer a right or power which does not exist without it, and the exercise of which without such license would be illegal. *Home Ins. Co.* v.

*Augusta,* 50 *Ga.* 530. The object of a statute requiring such license and a license fee or tax for its grant is to regulate and control the occupation for which the license is granted, so as to subserve the public welfare or prevent its being conducted in a manner injurious to the public good. In its popular meaning a license fee or tax includes any charge imposed for a license, whether the object is regulation or revenue, or both regulation and revenue. 37 C. J. 168 (§ 5)c. There is, properly speaking and as generally understood, a clear distinction between a license granted or required as a condition precedent before a certain occupation or business can be carried on, and a tax assessed on the occupation or business in which the license may authorize one to engage. There is such distinction between license fees, or license taxes and occupation taxes, and other ordinary taxes. This distinction has been clearly drawn in cases decided by this court. In *Mayor &c. of Savannah* v. *Charlton,* 36 *Ga.* 460, this court held that the City of Savannah could not impose a license tax upon a doctor who had been licensed to practice medicine in this State; but held that the practice of the profession of the doctor in the city was a subject of taxation by the corporation, but not of a license. In *Burch* v. *Savannah,* 42 *Ga.* 596, a person engaged in retailing spirituous liquors obtained a license as such retailer and paid the license fee or tax therefor. This court held that such dealer by reason of the payment of his license tax was not exempt from the special tax laid by the city upon retailers of spirituous liquors. It is true that a license tax may be imposed for raising revenue, or as a police regulation, or for both purposes. Where a license is required as a condition precedent before a business or occupation can be carried on and a fee or tax is required in payment of such license, the tax imposed is a license tax, and not one upon occupation. A tax assessed on the occupation or business in which such license authorizes one to engage is an occupation tax. *City of Waycross* v. *Bell,* 169 *Ga.* 57, 61 (149 S. E. 641).

The fee or tax imposed·by the motor-carrier act for the grant by the Public-Service Commission of a certificate of public convenience and necessity is in no sense an occupation tax. The obtaining of such certificate and the payment of a fee or tax therefor is only one step which is necessary to be taken in order to obtain a license to engage in the business of transporting passengers or freight or

both by motor buses upon the public highways of this State between fixed termini. The other fee or charge for the registration of each bus engaged in such business and for a license to operate each bus is essentially a license tax, and is so denominated in the act itself. While it is true that denominating a tax a license tax does not always make it such (*Home Ins. Co.* v. *Augusta*, supra), the fact that the legislature does declare it to be a license tax can be considered in determining its real character. Both of these fees or taxes are paid as conditions precedent to the grant of a license authorizing these motor carriers to engage in the business of transporting passengers or freight or both upon the highways of this State. The imposition of these fees or taxes is a regulation under the police power, which must be complied with as conditions precedent to engage in this occupation. The funds arising from the imposition and collection of these fees and taxes are to be used in paying the expenses and salaries of every character provided for under this act; and such sum or sums as may be left after such salaries and expenses have been paid on the first day of January of each year shall be paid to the highway department for use in the maintenance and repair of the highways, as may be directed by that department. The purpose of the imposition of these fees or taxes is to furnish the funds by which the motor-carrier act may be enforced, and to provide for the use of any surplus of these funds in repairing the highways of this State. So we are of the opinion that they are not imposed as occupation taxes upon motor carriers engaged in this business. They are imposed as conditions precedent with which such carriers must comply before they can obtain license to engage in such business.

The taxes imposed by these two acts do not constitute double taxation. The imposition of a license tax on vehicles used upon the public highways for carrying persons or property, in addition to the ad valorem tax on the vehicles as property, and a license tax on the right to pursue the occupation in which the vehicles are used, does not amount to double taxation. Harder's Fireproof Storage &c. Co. *v.* Chicago, 235 Ill. 58 (85 N. E. 245, 14 Ann. Cas. 536); 17 R. C. L. 486, § 13; City of St. Louis *v.* Bowler, 94 Mo. 633 (7 S. W. 434); City of St. Louis *v.* Weitzel, 130 Mo. 601 (31 S. W. 1045); City of St. Louis *v.* Green, 7 Mo. App. 468, 470; Kansas City *v.* Richardson, 90 Mo. App. 450; Frommer *v.* Richmond, 31

Gratt. (Va.) 646 (31 Am. R. 746). It is a settled rule that it is not double taxation to impose an ad valorem tax on property used in a business and also to impose a license tax on the business or the use of the property. Ohio River &c. R. Co. *v.* Dittey, 232 U. S. 576, 594 (34 Sup. Ct. 372, 58 L. ed. 737); Dunlap *v.* State, 16 Ala. App. 440 (78 So. 638); Jackson *v.* Neff, 64 Fla. 326 (66 So. 350). Besides, the mileage tax imposed under the above amendment is an occupation tax imposed upon the operators of motor buses for·the transportation of passengers or freight for hire over the public highways of this State. The operators of motor buses do not have the inherent right to transact, free of taxation, the business of transporting passengers or property for hire in auto buses over the public highways of this State. The State in its sovereign capacity may impose an occupation tax upon this business. It can impose such reasonable tax upon such business as it may see fit. It can impose a given per cent. per mile of travel by such buses as an occupation or business tax. So we are of the opinion that the mileage tax imposed by the amendment to the general tax act of 1927 has not been superseded by the taxes or fees imposed by the motor-carrier act of 1929. There is no such repugnancy between these acts as supersedes the tax imposed by the former by the taxes imposed by the latter.

■ But it is insisted that the tax imposed by the above amendment is a toll, and is prohibited by the act of Congress of November 9, 1921, which declares that "All highways constructed or reconstructed under the provisions of this chapter [on highways] shall be free from tolls of all kinds." U. S. C. A. title 23, § 9. This section does not deprive the State of the right, under the exercise of its police power, to enact reasonable regulations for the use of such highways, including the imposition of license or occupation taxes. Liberty Highway Co. *v.* Michigan Public Utilities Com., 294 Fed. 703; Anthony *v.* Kozer, 11 F. (2d) 641. These registration or license fees are not tolls within the meaning of this section of the Federal highway act. The mileage tax imposed can not be said to be a toll in the commonly accepted sense of a proprietor's charge for the passage over a highway or bridge, exacted when and as the privilege of passage is exercised. Carley *v.* Snook, 281 U. S. 66 (50 Sup. Ct. 204, 74 L. ed. 704, 68 A. L. R. 194). It is an occupation tax imposed upon the business

of transporting by auto buses passengers or freight for hire over the public highways of this State between fixed termini. It is not a toll exacted for the use of the highways; but is an occupation tax, so expressly declared by this amendment, for the privilege of doing business for private gain upon the highways of this State. So it does not offend this provision of the highway act of Congress.

■ It is further urged that section 19 of the motor-carrier act prohibits the imposition of the tax imposed by the above amendment to the general tax act of 1927. This section prohibits any city, municipality, or other political subdivision of this State from imposing any regulation license or operating fee or tax of any kind on any motor carrier licensed under this act; and no other license or operating fee shall be imposed upon any motor carrier by this State. This section simply prohibits the imposition of any license or operating tax other than that imposed by the motor-carrier act. It does not prohibit, for instance, the imposition of a tax by the State upon any property owned by any motor carrier licensed under the motor-carrier act. The operating tax referred to in this section is the license tax thereby imposed and made a condition precedent to the operation by a common carrier of auto buses used in the transportation of passengers or freight for hire. The imposition of an occupation tax upon such business is not prohibited by this section. "A license or operating tax" is not an occupation tax; and the latter is not a license or operating tax within the meaning of this section.

■ The plaintiff contends that as to its buses which it operates exclusively within the territory of "the municipality of 'Atlanta'," created by the act of August 17, 1929 (Acts 1929, pp. 835 et seq.), it is not subject to pay the taxes required by the motor-carrier act, it is not subject to the rules and regulations prescribed by the Public-Service Commission, it is not liable to the occupation mileage tax provided by the amendment to the general tax act of 1927, and it is not required to obtain from the Public-Service Commission, or any other regulatory body, a certificate of public convenience and necessity. This broad and sweeping contention is based upon the fact that by its express terms the motor-carrier act of 1929 does not by its express declaration include, and does not apply to, "motor vehicles operated exclusively within the corporate limits of cities or towns" of this State. If the "municipality of 'Atlanta'," created

by the above act of August 17, 1929, is a city or town within the meaning of the language, "cities or towns," as used in the above provision of the motor-carrier act, then the plaintiff's contention is well taken; but if "the municipality of 'Atlanta'," as created by said act, is not a city or town within the meaning of the language "cities or towns" as used in the above provision of the motor-carrier act, then this contention of the plaintiff is unsound. The "municipality of 'Atlanta'," created by the act of August 17, 1929, is not a city or town in the ordinary sense of cities or towns in this State, and as used in the above provision of the motor-carrier act of 1929. This will fully appear from a consideration of the provision of the act of August 17, 1929. Such consideration will clearly show the difference between the municipality created by this act and the corporate cities or towns of this State. This being so, the provisions of the motor-carrier act with which we are dealing does not exempt the operators of busses within this territory from the taxes imposed by the motor-carrier act, or from the occupation tax imposed by the above amendment to the general tax act of 1927, does not exempt them from the supervision of the Public-Service Commission, and does not relieve them, when operating as common carriers, from procuring from that body certificates of public convenience and necessity.

So we are of the opinion that the trial judge properly refused to grant an injunction as prayed for by the plaintiff.

*Judgment affirmed. All the Justices concur.*