35422.   BEARD *v.* CITY OF ATLANTA.

Decided January 26, 1955—Rehearing denied March 2, 1955.

*F. L. Breen,* for plaintiff in error.

*J. C. Savage, Ralph C. Jenkins,* contra.

GARDNER, P. J. 1. The ordinance under which the defendant was convicted requires that "Every licensed barber and apprentice in the city, after minimum price agreements or opening and closing agreements are operative under this article, shall procure an annual permit from the city barber board to practice under any such agreement. . . The annual fee for permits shall be five dollars." This ordinance is attacked as unconstitutional as being in violation of Code (Ann.) § 2-401, as follows: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." As to this constitutional provision, it was held in *City of Atlanta* v. *Hudgins,* 193 *Ga.* 618, 623 (19 S. E. 2d 508), as follows: "The subject matter of an existing general law is put beyond the reach of special laws. The broad objective of this paragraph of the Constitution was manifestly to prevent the confusion and uncertainty that would necessarily result if there existed at the same time a general law and a special law dealing with or regulating the same subject matter. It was intended to insure that once the legislature entered a field by enacting a general law, that field must thereafter be reserved exclusively to general legislation, and could not be open to special or local laws. The terms of the Constitution do not limit this rule to those fields and subjects which

have been completely exhausted by a general law. It embraces every field and subject which has been covered, though superficially, by a general law. If such a law is not exhaustive and fails to reach every minute element of the subject dealt with, the remedy, and the only constitutional remedy for a more exhaustive legislative treatment, is by amendment of the general law by a general enactment. It can not be done by amending or supplementing the general law by a special law. This provision of the Constitution would be nullified if by play upon words and definitions the courts should hold valid a special law when there existed at the time of its enactment a general law covering the same subject matter. The mere fact that the special law deals with some remote segment or element of the general subject embraced in the general law, which segment or element is not dealt with by the general law, does not alter the fact that such a special law is enacted in a case where provision has been made by an existing general law."

2.. With the above-quoted yardstick in mind, we examine the special law on the regulation of the trade of barbering, contained in Chapter 7 of the Atlanta Code, in connection with the general law on the regulation of that trade as contained in Chapter 84-4 of the Code of Georgia. That chapter sets up a State Board of Barber Examiners with power to adopt rules and regulations prescribing the sanitary requirements of a barber shop; to examine barber shops in regard to cleanliness and sanitary condition; to examine applicants for certificates of registration; to require physical examinations showing the applicant is free from infectious or contagious diseases and to inquire into his character, ability, and experience. In addition to the examination fee the applicant pays a $5 registration fee, $7 for certificate of registration, and annual renewal fees of $2. When he has complied with these requirements, he is licensed to carry on the trade within this State. The purpose of the general law is accordingly to sift qualified from unqualified applicants, to license qualified applicants, and thereafter to keep practicing members of the trade under supervision, with provisions for revocation of said certificates of registration if the person involved fails to keep within the standards set up.

3. The Atlanta ordinance sets up a City Barber Board vested

with general power to enforce the administration of the same, and the requirements of the ordinance are to see that barbers within the city do the following: Section 7.5—Observe stated opening and closing hours (that this provision is void as being unreasonable, see *Chaires* v. *City of Atlanta,* 164 *Ga.* 755 (1), 139 S. E. 559, 55 A. L. R. 230). Section 7.6 prohibits barber shops from being open on Sundays (which is otherwise covered by general law). Section 7.7 prohibits barber shops from remaining open on holidays. Sections 7.8, 7.9 prohibit advertising prices or charging prices less than minimum prices fixed in accordance with rules and regulations of the city board (that a city has no right to engage in price fixing, see 62 C. J. S. 99, § 239, and footnote). Sections 7.10, 7.11 prohibit colored barbers from serving white women and call for posting of signs showing what races are served (that this provision is void, see *Chaires* v. *City of Atlanta,* supra, headnote 2). Section 7.3, here under consideration, requires payment of $5 annually to "procure an annual permit from the city barber board to practice under any such [minimum price] agreement." Under section 7.37 the amounts so collected go to pay expenses incidental to the administration of this article, the balance, if any, to be turned over to the city treasury.

It follows that the ordinance, in attempting to regulate a trade already under State regulation, comes within the constitutional inhibition that no special law shall be enacted in any case for which provision has been made by an existing general law. It attempts to deal with "some remote segment or element of the general subject embraced in the general law," but this attempt does not add anything to its vitality. The main purpose of the board appears to be to engage in price fixing under agreements of percentages of the practicing members of the trade. Nothing in the case of *Anthony* v. *City of Atlanta,* 66 *Ga. App.* 506 (18 S. E. 2d 82), can be construed as holding that the city has any constitutional right to engaged in price fixing, it being held there only that the question was not properly raised. On a similar question, and under a state of facts closely resembling the situation here, it was held in Trimble *v.* City of Topeka, 147 Kan. 111 (75 Pac. 2d 241), reversing the conviction of a municipal court for violation of a similar ordinance, as follows: "If the city

may ignore these requirements and regulations with respect to barbers, and set up its own standards and requirements, and in some particulars refuse rights granted by the State, and in others confer rights refused by the State, then it may do the same with doctors, dentists, and the other professions and occupations above listed. . . Although it be conceded that the State has granted power to the city to enact ordinances to guard the public health, it does not follow that an ordinance of the city may ignore the State's own regulatory acts, or deny rights granted by the State or grant rights denied by the State, and in effect nullify the State law. . . There is no purpose to be served by the examining board, for it has no function legally to be performed; the only purpose of the tax or license fee imposed is to pay the salary of the board and of the inspector, and the State having fully legislated on the subjects over which they would have control under the ordinance, they have no duties to perform the expense of which might be defrayed by collection of license fees."

It was held in *Mayor &c. of Savannah* v. *Charlton,* 36 *Ga.* 460 (a case which has been frequently cited up to the present), that one obtaining a license from the State to practice medicine cannot legally be compelled to obtain a further license from the city before practicing there, as to so hold would be to elevate the ordinance of the city above the laws of the State. The annual permit required by the city, and the annual certificate of registration required by the State (although the latter was held in *Ham* v. *State,* 59 *Ga. App.* 872, 2 S. E. 2d 504, to be not such a license tax as came under a veterans' certificate of exemption), serve the identical purpose of enabling one to practice a trade which, without such permit or certificate, he could not, and there is accordingly evidenced an intention on the part of the city to prohibit that which is authorized or licensed by the State unless this condition is fulfilled, and accordingly to infringe upon a field covered under State law. Further, § 7.3 is so interwoven with the remainder of the ordinance as to show a contrary intent.

4. It is contended by counsel for the City of Atlanta that the fee here charged is authorized by the act of 1937, p. 1503, authorizing the mayor and council to require any person engaging in any trade to "pay for such registration and for license to

engage in . . . such business . . . or profession, such fee, charge or tax as said mayor and general council may deem expedient for the safety, benefit, convenience and advantage of said city, said tax, registration fee, or license herein provided for shall be imposed in the discretion of the mayor and general council." In support of this proposition, there is cited in the briefs of counsel certain provisions of Chapter 26 of the Code of Atlanta requiring that "all persons engaged in any business, trade or occupation . . . shall be required to register . . . and to obtain a license for the business." These are issued by the clerk of the board of aldermen and fees are payable to the city comptroller. The barbers' permit is issued by the City Barbers Board, and fees are payable to it for its expenses of operation. The former section, authority for which is .contained in the charter, is in the nature of an occupation tax, the latter is in the nature of a license to practice a trade. As stated in *Publix-Lucas Theatres* v. *City of Brunswick,* 206 *Ga.* 206, 212 (56 S. E. 2d 254): " 'There is a clear distinction recognized between a license granted or required as a condition precedent before a certain thing can be done, and· a tax assessed on a business which that license may authorize one to engage in: 42 *Ga.*, 596. A license is a right granted by some competent authority to do an act which, without such license, would be illegal. A tax is a rate or sum of money assessed on the person, property, etc of the citizen: Bouv. L. D.; 36 *Georgia,* 460. A license is issued under the police power of the authority which grants it. If the fee required for the license is intended for revenue, its exaction is an exercise of the power of taxation: Cooley's Const. Lim., 201. . .' *Home Insurance Co. of N. Y.* v. *Augusta,* 50 *Ga.* 530, 537." Again, in *Inter-City Coach Lines* v. *Harrison,* 172 *Ga.* 390, 396 (157 S. E. 673): "Where a license is required as a condition precedent before a business or occupation can be carried on and a fee or tax is required in payment of such license, the tax imposed is a license tax, and not one upon occupation. A tax assessed on the occupation or business in which such license authorizes one to engage is an occupation tax. *City of Waycross* v. *Bell,* 169 *Ga.* 57, 61 (149 S. E. 641)."

From the above, it is obvious that, if the annual permit be considered a license to engage in barbering, its requirement is

invalid as being an infringement on the general law of the State. Further, it is not, under the provisions of the act of 1937, supra, a mere occupation tax designed as a revenue measure for the city so as to be permissible under the act. Accordingly, the City of Atlanta had no charter power to require the payment of the fee in question, and the ordinance under which the defendant was convicted was violative of the constitutional provision relating to general and special legislation.

The superior court erred in refusing to sanction the writ of certiorari.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*

ON MOTION FOR REHEARING.

1. It is contended that the judgment of the superior court refusing to sanction the writ of certiorari is correct, although the reason therefore might have been erroneous, and that a correct judgment will be sustained although the reason given therefor is erroneous. The motion to rehear sets out that the bond required under the provisions of Code § 19-214 is insufficient, in that the certified copy of the bond attached to and made a part thereof bears this certificate: "This is to certify that this is a true copy of the certiorari bond in case G-16620 (s) Forrest E. Johnson, Clerk, Recorder's Court, City of Atlanta." It is contended that this certified copy fails to show the following essential facts: (1) that it was in the amount fixed by the presiding judge; (2) that it was approved by the clerk of court; (3) that it was filed with the clerk of the court. As to the first contention, the face of the bond shows that it was approved by the judge, and we do not believe he would have approved the bond if it had not been in an amount fixed by him. As to the second contention, the face of the bond also shows that it was approved by the clerk of the court. As to the third contention, the petition for certiorari incorporated in the bill of exceptions, certified to by the judge of the superior court, alleges: "That he has executed and filed with the Clerk of the Municipal Court of Atlanta . . . the bond required by Georgia Code Section 19-206, a certified copy of which is attached hereto and marked 'Exhibit D'." Code § 19-206 contains the requirements of law relating to such bonds. In *Hubert v. City of Thomasville*, 18 *Ga. App.* 756 (1a) (90 S. E. 720) it is held as follows: "The best way to show that a proper bond

has been given is to attach to the petition a certified copy of the bond, with a certificate of approval by the proper officer, and allege affirmatively that the bond was given and approved as required by law." The face of the bond contains the following: "Approved by Luke Arnold. Case No. G 16620 Bond No. 4. (s) Judge Luke Arnold," and also: "Approved: (s) Forrest E. Johnson, Clerk, Recorder's Court, City of Atlanta." We think that the certificate of the clerk together with these approvals meet the statutory requirements as set out in *Hubert* v. *City of Thomasville,* supra, and that they, together with the affirmative statements in the petition for certiorari, affirmatively show that the bond was properly approved, accepted, and filed. We do not believe it can be sincerely contended that the bond can not and will not be forfeited in the event the defendant fails to comply with its provisions.

2. It is contended in the motion for rehearing that this court cannot properly pass on the constitutionality of the ordinance under which the petition for certiorari alleges the defendant was put on trial in the recorder's court. The refusal of the judge of the superior court to sanction a writ of certiorari is a proper assignment of error. *Paulk* v. *Hawkins,* 106 *Ga.* 206 (32 S. E. 122). In passing on whether the superior court erred in such refusal, the properly pleaded allegations of the petition must be taken as true and applied to the assignments of error. *Linder* v. *Renfroe,* 1 *Ga. App.* 58 (1, 2) (57 S. E. 975); *Green* v. *State,* 4 *Ga. App.* 260 (2) (61 S. E. 234). Accordingly, error in refusing to sanction a petition for certiorari is tested in much the same way as error in sustaining a general demurrer to pleadings. This court cannot determine whether or not the superior court should have sanctioned the petition for certiorari except by an examination of the allegations of the petition seeking the writ; and the court is of the opinion, as hereinbefore set out, that the allegations of this petition, taken as true for the sole purpose of determining whether it should have been sanctioned, are sufficient to show error on the part of the judge of the superior court in his judgment of refusal to sanction the writ.