S12G1915. RUTTER v. RUTTER.

(749 SE2d 657)

THOMPSON, Chief Justice.

We granted a writ of certiorari to the Court of Appeals in *Rutter v. Rutter*, 316 Ga. App. 894 (730 SE2d 626) (2012), to determine which of two pieces of legislation, House Bill 1576 (Ga. L. 2000, p. 491, § 1) or Senate Bill 316 (Ga. L. 2000, p. 875, § 2), each constituting an alternative version of OCGA § 16-11-62 (2), survived to become law. To begin our task, we must examine when the acts were approved and when they became effective. To complete our task, we must decide whether the two acts can be reconciled and harmonized or whether they are repugnant to one another.

This is a divorce case in which Stacy Rutter surreptitiously installed several video surveillance devices in the marital home. Prior to trial, Stacy's husband, Charles Rutter, moved to exclude any video recordings derived from the use of the surveillance devices on the ground they were made in violation of OCGA § 16-11-62 (2).[1] The trial court denied the motion to exclude, relying upon the "curtilage" exception set forth in OCGA § 16-11-62 (2) (C),[2] but certified its ruling

---

[1] This Code section makes it unlawful for any person "to observe, photograph, or record the activities of another which occur in any private place and out of public view" without consent. It is to be applied to "protect *all* persons from invasions upon their privacy, including invasions made upon the privacy of one spouse by the other in a private place." *Ransom v. Ransom*, 253 Ga. 656 (324 SE2d 437) (1985). Evidence obtained in violation of this Code section is inadmissible in any court of this State. OCGA § 16-11-67.

[2] This subparagraph states that, OCGA § 16-11-62 (2) notwithstanding, it is not unlawful "[t]o use for security purposes, crime prevention, or crime detection any device to observe,

for immediate review. The Court of Appeals granted husband's application for interlocutory review and affirmed, holding subparagraph (2) (C), set forth in House Bill 1576, survived the subsequent enactment and approval of Senate Bill 316, which does not contain a similar subparagraph. In so doing, the appellate court reasoned, inter alia, that the two pieces of legislation were not repugnant. We granted certiorari and posed these questions:

> 1. Did the Court of Appeals err in determining that subparagraph (2) (C) of the version of OCGA § 16-11-62 contained in HB 1576 survived the later enactment of SB 316, which set forth an amended version of OCGA § 16-11-62 that does not contain subparagraph (2) (C)?
> 2. If subparagraph (2) (C) of OCGA § 16-11-62 survives, did the Court of Appeals correctly interpret its meaning?

We hold that subparagraph (2) (C) did not survive the subsequent amendment to OCGA § 16-11-62 and that, therefore, the judgment of the Court of Appeals must be reversed.

House Bill 1576 was approved by the Governor on April 20, 2000, and became effective the same day. It amended OCGA § 16-11-62 (2) by adding the "curtilage" exception set forth in subparagraph (2) (C). Senate Bill 316 was approved on April 27, 2000, and was effective on July 1, 2000. Senate Bill 316 amended OCGA § 16-11-62 by "striking" that Code section and "inserting in its place a new Code section." The "new Code section" set forth in the Senate Bill does not contain a subparagraph (2) (C), nor does it contain a provision with a curtilage exception similar to subparagraph (2) (C).[3]

Based on the dates of the enactment of the acts and their respective effective dates, it appears that Senate Bill 316 eliminated the "curtilage" exception set forth in subparagraph (2) (C) from

---

photograph, or record the activities of persons who are within the curtilage of the residence of the person using such device." It was set forth in House Bill 1576, but not Senate Bill 316.

[3] Subparagraph (2) (C) was included in OCGA § 16-11-62 at the direction of the Code Revision Commission. See OCGA § 28-9-1 et seq. Thus, anyone looking to the Official Code of Georgia would naturally conclude that the curtilage exception was good law. We agree with the Court of Appeals, however, that publication of subparagraph (2) (C) in the Official Code plays no role in determining its validity. *Rutter*, supra at 895, n. 4. See also OCGA § 28-9-5 (c) ("Any change or correction made by the Code Revision Commission pursuant to its authority under subsection (a) of this Code section shall not become the law of the State of Georgia if such change or correction results in an alteration of the meaning, sense, or effect of the Acts and resolutions of the General Assembly, even though such change or correction may have been included in a pocket part, supplement, or revised volume of the Official Code of Georgia Annotated which has been reenacted by a bill authorized by subsection (b) of this Code section.").

OCGA § 16-11-62 by implication.[4] However, repeals by implication are not favored by law, *Kilpatrick v. State*, 243 Ga. 799 (256 SE2d 900) (1979), and, inasmuch as both pieces of legislation were passed in the same session, we presume they are " 'imbued with the same spirit and actuated by the same policy, and they are to be construed together as parts of the same act.' " *Inter-City Coach Lines v. Harrison*, 172 Ga. 390, 395 (3) (157 SE 673) (1931). That is because "[i]t is the duty of courts, *whenever possible*, to construe acts passed by the same legislature, and approved at the same time,[5] so as to make both valid and binding, and to give effect to all the terms of both, so as to make them capable of enforcement." (Emphasis supplied.) Id. Thus, we must determine whether it is possible to construe the acts in pari materia or whether " 'they are [so] clearly and indubitably contradictory . . . they can not reasonably stand together.' " *Sutton v. Garmon*, 245 Ga. 685, 687 (266 SE2d 497) (1980); *Reid Rental v. City of Waycross*, 197 Ga. App. 676, 677 (399 SE2d 247) (1990).

Considering the clear language of the legislative acts, we conclude they are in irreconcilable conflict. To put it simply: Under the earlier House Bill, one who surreptitiously records the activities of another within the curtilage of his or her home has done nothing unlawful because subparagraph (2) (C) creates an exception to the general prohibition set forth in OCGA § 16-11-62; under the subsequent Senate Bill, the same conduct is deemed unlawful. Thus, we have two statutes pertaining to the same conduct which are irreconcilably inconsistent; they cannot reasonably stand together. It follows that subparagraph (2) (C) did not survive the subsequent enactment of Senate Bill 316. *Keener v. MacDougall*, 232 Ga. 273, 276 (206 SE2d 519) (1974); *Gunn v. Balkcom*, 228 Ga. 802, 804 (188 SE2d 500) (1972). The Court of Appeals erred in ruling otherwise.

In view of our ruling, we do not decide whether the Court of Appeals correctly interpreted the meaning of subparagraph (2) (C).

*Judgment reversed. Hines, P. J., Benham, Melton, Nahmias, JJ., and Judge Robert Charles McBurney concur. Hunstein, J., dissents. Blackwell, J., disqualified.*

HUNSTEIN, Justice, dissenting.

I agree with the Court of Appeals, trial court, Attorney General, and Legislative Counsel that the curtilage exemption in OCGA § 16-11-62 (2) (C), which has been in effect since 2000, remains a valid

---

[4] Assuming, without deciding, that Senate Bill 316 does not repeal subparagraph (2) (C) specifically, we will determine whether the subparagraph was repealed by implication. *Branch Bank of Alabama v. Kirkpatrick*, 5 Ga. 34, 35 (1848).

[5] Meaning, in context, "passed at the same session of the legislature." Id.

law. The fact that Governor Roy Barnes approved Senate Bill 316 after he approved House Bill 1576 containing subparagraph (2) (C) should not be controlling.

Under our case law, two bills passed during the same legislative session on the same subject matter should be construed together "so as to make both valid and binding, and to give effect to all the terms of both, so as to make them capable of enforcement." *Inter-City Coach Lines v. Harrison*, 172 Ga. 390, 395 (3) (157 SE 673) (1931). Repeals by implication are not favored by the law. See *Montgomery v. Board of Education of Richmond County*, 74 Ga. 41, 45 (1885). A review of the legislative history of OCGA § 16-11-62 shows that the House bill with the curtilage exception was enacted a week *after* the Senate bill: The Georgia General Assembly passed Senate Bill 316 on March 15, 2000 and House Bill 1576 one week later on March 22, 2000. See Ga. Senate Journal 2000, pp. 1411, 2103; Ga. House Journal 2000, pp. 2559, 3882. Therefore, the version of OCGA § 16-11-62 that the Senate bill struck was the one in effect on March 15, 2000, not the House bill then under consideration. As a result, the Senate bill could not, and did not, strike the curtilage exception in subparagraph (2) (C) that had not yet been enacted into law. Indeed, the day after the enactment of the Senate bill, the Senate amended the House bill to add a curtilage exception. See Ga. Senate Journal 2000, p. 1708, § 5; Ga. House Journal 2000, pp. 2102, 2881, 2967. The majority opinion ignores the legislature's intent as shown by this legislative history in deciding that the Senate bill repealed the curtilage exception.

Moreover, Senate Bill 316 did not repeal the curtilage exception, either expressly or by implication. As the Court of Appeals found, "[N]o language in SB 316 . . . expressly and specifically repeals either HB 1576 or subparagraph (2) (C)." *Rutter v. Rutter*, 316 Ga. App. 894, 895 (1) (730 SE2d 626) (2012). Instead, the Senate bill is silent on the exception for the curtilage. See Ga. L. 2000, p. 875, § 2. Absent an express repeal, courts must construe the statutes to avoid an implied repeal "unless the later act clearly contradicts the former act and their differences cannot be reconciled or the most recent enactment appears to cover the whole law on the subject." See *Chatham County v. Hussey*, 267 Ga. 895, 895 (485 SE2d 753) (1997). In the Court of Appeals decision, then-Judge Blackwell considers at length whether Senate Bill 316 repealed the curtilage exception by implication, persuasively explaining why it did not. See *Rutter*, 316 Ga. App. at 896-898. The omission of subparagraph (2) (C) in the Senate bill could not have been the Senate's or General Assembly's final intent on the subject since the Senate adopted a curtilage exception the day after Senate Bill 316 was enacted into law. Therefore, the Court of Appeals correctly held that the curtilage exception survived the enactment of

Senate Bill 316 because the two pieces of legislation could be reconciled to effectuate the intent of the General Assembly. Cf. *Keener v. MacDougall*, 232 Ga. 273, 275-277 (206 SE2d 519) (1974) (finding two acts irreconcilable when House bill provided for waiver of grand jury indictment "[i]n all felony cases" and Senate bill provided for waiver of grand jury indictment "[i]n all felony cases, other than capital felonies").

For these reasons, I would affirm the judgment of the Court of Appeals.

DECIDED OCTOBER 7, 2013 —
RECONSIDERATION DENIED NOVEMBER 4, 2013.

*Bray & Johnson, Roger M. Johnson, Jennifer S. Gill, Adam M. Hames*, for appellant.

*Hill Macdonald, Vic B. Hill, Brad E. Macdonald, Abbott & Abbott, Parri S. Abbott, Robert K. Abbott, Jr.*, for appellee.

*Wayne R. Allen*, amicus curiae.