HOWELL *vs.* THE STATE OF GEORGIA.

The constitution does not require that the title of an act should contain a synopsis of the law, but that the act should contain no matter variant from the title. If the title is descriptive generally of the purposes of the act, it is sufficient, and it is not necessary that it should particularize the several provisions contained in the body of the act.

(*a.*) This provision grew out of the "Yazoo act."

(*b.*) An act the title of which was to prohibit the sale of intoxicating liquors within certain limits, was not unconstitutional as contain-

ing matter different from the title because it provided that no intoxicating liquors, plantation bitters, or other intoxicating bitters sold under the name of patent medicine, should be sold within such limits.

2. An act should not refer to more than one subject matter.

(*a.*) An act prohibiting the sale and vending of spirituous liquors may declare what are such liquors ; and such declaration does not render the act unconstitutional as referring to more than one subject matter.

(*b.*) It would be competent for the legislature to pass a general law prohibiting the sale of intoxicating liquors ; and the fact that they have confined such inhibition to certain localities, though widely separated, does not render it unconstitutional.

(*c.*) The practice of the various departments of the government, as a means of collateral interpretation, is not to be rejected by the courts in passing on the constitutionality of a law.

(*d.*) A law will not be set aside as unconstitutional unless its conflict with the constitution is plain and obvious.

(*e.*) This case differs from those in 51 *Ga.*, 571; 61 *Ib.*, 20. Those cases held that separate corporations could not be chartered by one act. The present act provides a police regulation.

September 11, 1883.

Criminal Law. Constitutional Law. Liquor. Before Judge BROWN. Milton Superior Court. February Term, 1883.

Reported in the decision.

BELL & BELL, for plaintiff in error.

G. F. GOBER, solicitor general, for the state.

HALL, Justice.

The defendant was tried and found guilty of selling spirituous liquors in quantities less than a gallon without first taking and subscribing the oath required by law. This is one of the counts in the indictment on which the jury based their finding. The other count on which they found charged him with " selling and vending a certain quantity of intoxicating bitters," under the name of " patent medicine," and also a certain quantity of intoxicating

liquor " within two miles of the male academy," and within the same distance of the " female academy, at Alpharetta," in the county of Milton.

This last count is founded upon an act of the general assembly, entitled " an act to prohibit the sale of intoxicating liquors within certain limits of the depot on the Atlanta and Richmond Air-Line Railroad, at Duluth, in the county of Gwinnett, or within two miles of the male or female academy at Alpharetta, in the county of Milton, or within one mile from the centre of the town of Chickasawhatchie, in Terrell county, or within one mile from the depot building in the town of Milner, on the Macon and Western Railroad," approved February 28, 1874. By the first section of this act, it is made unlawful " for any person or persons to sell or vend any intoxicating liquors, plantation bitters, or other intoxicating bitters sold under the name of patent medicine," within the limits of either of the places named in the title. A violation of this provision of the statute is declared a misdemeanor, and the offender is subjected to the punishment prescribed for retailing without license. (Acts 1874, p. 211, 212.)

It is insisted that this act is unconstitutional upon two grounds, viz : 1st, That it " refers to more than one subject matter," and 2dly, that it " contains matter different from what is expressed in the title thereof." (Constitution of 1868, Art. iii., §iv., par. v.; Code of 1873, §5056.)

1. The last point will be first considered. The title indicates the prohibition of the sale of " spirituous liquors" only, while the body of the act prohibits " the sale of plantation bitters, or other intoxicating bitters sold under the name of patent medicine." It is insisted that these bitters are matters different from the spirituous liquors set out in the title. The evidence in this case makes it clear that they belong to the same family. They are given a captivating or popular name in order to conceal their real character. They are professedly manufactured and sold as a medicine, while in fact they are used as a

beverage. This clause of the constitution " does not require that the title should contain a synopsis of the law, but that the act should contain no matter variant from the title." *Martin vs. Broach,* 6 *Ga.,* 27. The general object of the law is all that need be indicated by the title. To go further and require every end and means necessary or convenient for the accomplishment of this general object to be enumerated in the title, would go beyond the purpose of the authors of this clause. They intended by it, among other things, to remedy a practice, " by which, through dexterous management, clauses were inserted in bills of which the title gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect." Cooley's Const. Lim., 143. This salutary restriction was never intended to embarrass, but was designed to prevent vicious and fraudulent legislation. This constitutional restriction originated in this state, and is first found in the constitution of 1798. It grew out of a striking incident in our history. The act of the 17th January, 1795, well known as the Yazoo act, under the patriotic and commendable purpose of paying the late state troops, and of " protecting and supporting the frontier settlements," as its title declared, made a large grant of land to a private company of speculators; and when the fraud was discovered, it gave rise to a controversy of a very determined and earnest, if not angry, character, which lasted for many years. *Savannah vs. The State,* 4 *Ga.,* 38.

None of the decisions made by our courts ever went further than to require that it would be sufficient " if the title was descriptive generally of the purposes of the act, and that it was not necessary that it should particularize the several provisions contained in the body of the act." All that was essential to its validity was that it should not contain matter " different from what is expressed in the title." *Green vs. The Mayor, etc., R. M. Charlton's R., 368; Smith and wife vs. Oliver, Dudley's R., 191,* and nu-

merous decisions of this court and the courts of other states whose constitutions contain a similar provision, cited in note 7, Cooley's Const. Lim., p. 178.

2. Whether expressed or not, it would seem to follow, from this restriction, that the act should not refer to more than one subject-matter; at least, this requirement, if not necessarily involved in the idea, is essential to the completion of the policy it enjoins.

What is the subject-matter of the enactment in question? It is the prohibition of the sale and vending of spirituous liquors, as has been shown; it does not matter whether these liquors were of one kind or another, or whether they were mixtures of each other, or contained some other ingredient; they are still intoxicating liquors; they are not drugs or medicine. We apprehend that it was competent for the general assembly to declare what should be spirituous liquors, and this is all that has been done in this instance. We all know, from observation at least, that many of these vile compounds are more hurtful in their effects than would be pure liquor; and we are satisfied that in many instances the introduction of such foreign ingredient has been resorted to as a device to evade the force of the laws regulating the time and mode and places of retailing and vending spirituous liquors.

The selling and vending spirituous liquors being, then, the single subject-matter of the act, how can a specification of divers localities, widely separated it may be, in which their sale is prohibited, give countenance to the objection, that the act embraces more than one subject-matter. Undoubtedly the legislature had the power to make this inhibition general, and, having this power, it would seem that they might confine it to certain specified localities. This has been done for many years past, and quite a number of the acts of the general assembly have, in this form and by a similar combination, provided for these police regulations for widely separated places. The liquor license, for example, is controlled by different reg-

ulations in incorporated towns, cities and villages from those that obtain elsewhere. What might prove a good provision for one locality might be very insufficient for another.

The practice of the various departments of the government, as a means of collateral interpretation, is not to be rejected by the courts, in passing upon the constitutionality of a law. It is entitled to consideration and weight, especially in view of another settled rule, that a law is not to be set aside unless its conflict with the provisions of the constitution is plain and obvious. *Wellborn vs. Estes,* 70 *Ga.,* 390.

We do not think that the cases of *Ex parte Conner,* 51 *Ga.,* 571; *King and others vs. Banks and others, relators,* 61 *Ib.,* 20, relied upon by counsel for plaintiff in error, are in point here. These cases determined nothing further than that it is not competent for the general assembly to enact a law creating three separate and distinct corporations, or reviving by name three charters which had become obsolete, or incorporating two towns by one and the same act.

Speaking for the court in the first of these cases McCay, J., says: " This act has for its avowed purpose the creation of three separate corporate bodies, and, as we think, comes exactly within the extent and scope of this prohibition. The evident intent was to prevent what is commonly known as ' log rolling,' passing through a measure not on its own merits, by combining it with other measures, and thus pulling them through by virtue of their combined strength. This bill (act?) is, too, one for private benefit, and makes just the case provided for." " A fertile imagination can always get up some sort of a thread that will connect ideas, however incongruous. The thread suggested here is that these companies have a common purpose. But that is true of two railroads or two banks." The distinctions between what are incongruous subjects of legislation in the same act are pointed out and enforced with equal clearness by Jackson, J., in the last of the above

cited cases, where the principle was applied to two municipal corporations included in the same act.   Each of these corporations was a new being; a separate and distinct entity, having no connection with, or dependence upon, each other.   But can this be true of police regulations?   We think not.

In *Allen vs. Tison et al.*, 50 *Ga.*, 374, this court held, that an act authorizing two counties, Lee and Butts, to issue bonds to erect court-houses in each of these counties, was not obnoxious to this constitutional provision, but was a valid act.   This decision was before the court when the two last were made, and was not referred to as opposing the views then taken.   In truth, there is no conflict between them.

Such is not only the view taken by this court of this constitutional provision, but by nearly if not quite all of the other states having similar restrictions in their constitutions.   See Cooley's Const. Lim., 144, 145, marginal pages and notes, especially Woodson *vs.* Murdock, 22 Wallace, 351; State *vs.* County Judge of Davis county, 2 Iowa, 280; Erlinger *vs.* Boneau, 71 Ill., 94, especially pp. 98, 99, where the precise question made here is dealt with, and Indiana Cent. Railroad *vs.* Potts and others, 7 Ind. R., 681.

Without very grave reasons we cannot come to a conclusion which would upturn and destroy much valuable and indeed indispensable local legislation enacted for many years past for the preservation of the peace, good order and morals of citizens of the state, residing in its various towns, cities and villages and other localities requiring the protection extended to them by the various enactments similar, if not identical in every particular, with the one now under consideration.

Judgment affirmed.