CITY OF ALBANY *et al. v.* ADER.
CITY OF ALBANY *et al. v.* HENLEY.

Nos. 9110, 9121.　FEBRUARY 16, 1933.

S. B. *Lippitt*, for plaintiff in error.

*W. H. Burt,* R. S. *Roddenbery Jr.,* and *E. Smythe Gambrell,* contra.

BECK, P. J.　S. H. Ader, doing business as Ader Coach Lines, instituted a petition against the City of Albany, its mayor and chief of police, seeking injunction to prevent the enforcement of a certain ordinance of the City of Albany affecting the operation of motor-carriers for hire over the streets of that city, adopted March 22, 1932.　To this petition demurrers, plea, and answer were filed by the defendants.　In the petition it is alleged that Ader Coach Lines is a licensed motor-carrier for the State of Georgia, under the provisions of the act of the General Assembly approved August 27, 1931 (Ga. Laws 1931, pp. 199-213), holding three certificates of public convenience and necessity from Albany to Columbus and from Albany to Thomasville; that petitioner has complied with the rules of the Georgia Public Service Commission, has paid all taxes and licenses required of it under what is known as Class A certificate, etc.; that petitioner is required to observe certain schedules, and if required to meet the exactions of the ordinance in question, it will interfere with public convenience and necessity.　The judge upon the hearing passed an order overruling the demurrers and granting an interlocutory injunction.　To that judgment the defendants excepted.

The ordinance of the City of Albany, to restrain the enforcement of which the petition was brought, is entitled, "An ordinance to provide for the regulation of motor-carriers operating in and through the City of Albany, Georgia; the routing of said motor-carriers; the levying of a street-tax on such motor-carriers, for the purpose of maintenance, repairs, and upkeep of the streets of the City of Albany; to provide a penalty for the violation of this ordi-

nance; and for other purposes." In the body of the ordinance it is provided that after the passage of the same it shall be unlawful for any person or corporation to use the streets of the City of Albany for the purpose of transporting passengers or goods for hire, etc., except upon the conditions provided in the ordinance; and in another section it is provided that all persons or corporations operating motor-buses or motor-trucks as common carriers, whether interstate or intrastate, shall be assessed certain annual fees; and there are also provisions relating to carriers of passengers and goods not common carriers; but that both common carriers for hire and other carriers for hire shall pay a certain "annual tax and assessment" in a stated amount per mile for each mile or fraction thereof on any streets or lanes of the City of Albany over which said motor-vehicles shall be operated. Another section of the ordinance is in part as follows: "That all of the funds arising from the street-tax fees herein provided shall be by the city clerk and treasurer placed to a special fund to be known as the 'street-improvement fund,' and shall be kept separate and distinct from the general or other funds of the City of Albany," and that this fund shall be used exclusively for the repairment and maintenance of the streets of the City of Albany. Further, it is provided in the ordinance that the "street-tax fees" so provided for shall be in addition to all other lawful taxes or assessments levied upon persons or property, etc.; and further, that any operator of any motor-bus or truck coming within the provisions of the ordinance, and all officers and employees connected with the operation of such motor-bus and motor-truck, who shall violate any of the provisions of the ordinance or any part thereof shall, upon conviction in the city court of Albany, incur the penalty provided in the ordinance. There are other provisions which it is not necessary to state, as the character of the ordinance and its purposes are sufficiently indicated by what is set forth above.

It is contended in the petition that the ordinance is invalid, null and void, particularly upon the ground that it is in conflict with and in contravention of the express provisions of section 18 of the act of the General Assembly of this State, regulating common carriers and prescribing conditions and regulations under which common carriers by motor-vehicles are permitted to operate upon the highways of this State, etc., which act is cited as the "motor common-carriers act of 1931" (Ga. Laws 1931, p. 199-213). Section

18 of the act referred to is as follows: "Every motor common carrier shall annually on or before January first, as long as such certificate remains in force, or before the vehicle is put into use, as to a vehicle put into use during the course of the year, make application to the commission for registration of each and all motor-vehicles to be operated under said certificate, in manner and form as the commission may by rule or regulation prescribe, and shall pay to the commission a fee of $25 for each vehicle for the registration of the same and the issuance of a permit or license to operate the same. No subdivision of this State, including cities, municipalities, villages, townships, or counties shall levy any excise, license, or occupation tax of any nature on said equipment, or the right to operate said equipment or any incidents of said motor-carrier business, or on a motor common carrier. The money derived from the issuance and transfer of certificates and from the registration fee shall be subject to be used by the commission for the administration and enforcement of this act, and any sum as may be left over and unexpended on the first day of January of each year shall be paid to the State Treasurer and shall be disbursed by him and paid to the State Highway Department for use in maintenance and repair of the highways as in the discretion of the highway board may be directed."

We are of the opinion that the taxing provisions of the ordinance in question, in so far as they apply to plaintiff, are illegal and void, as contended, because in violation of that portion of the motor common-carriers act of 1931 quoted above. In *City of Waycross* v. *Bell,* 169 *Ga.* 57 (149 S. E. 641), involving an attack by motor carriers on the 1928 general tax ordinance of the City of Waycross, fixing a municipal tax upon motor carriers, it was said in part: "Construed in the light of the foregoing rulings, it is evident that the General Assembly intended to relieve those engaged in the specified business or occupation from 'municipal license tax,' and thereby the municipality was forbidden to impose either a license fee or license or occupation tax upon the business of the defendants in error; and that portion of the tax ordinance of the municipality attempting to impose a tax upon the businesses exempted from municipal taxation by the General Assembly was ineffectual and invalid. The ordinance of the municipality must yield to the higher authority of the legislature of the State." And we think that it is evident

from the provision of the motor common-carriers act of 1931 that it was the purpose of the General Assembly that the State should reserve for itself the exclusive right to tax the business in question here and the person or corporation carrying on that business. See, in this connection, *Mayor &c. of Columbus* v. *Flournoy*, 65 *Ga.* 231, where this court ruled a principle similar to that applied in this case. The right of a State to assume exclusive regulatory or taxing authority over certain kinds of businesses has been recognized in most, and possibly all, the jurisdictions of this country. Motor transportation is being taxed and regulated largely through State laws; most, if not all, the States have laws relating to regulation and taxation of motor-vehicles, and many of them have imposed restrictions upon the towns and cities similar to those in the instant case. In Heartt·*v.* Downers Grove, 278 Ill. 92 (115 N. E. 869), dealing with the question involved, it was said: "It was the manifest purpose of the legislature to bring the whole subject of regulating the use of motor-vehicles under the control of the State; that automobiles were extensively used in making tours of considerable distance in which many cities, villages, and towns would be visited; that the legislature did not intend that the owner of an automobile should be held up and made to pay a license fee or tax by the authorities of every city, town, or village which the owner visited or passed through." And in Buffalo *v.* Lewis, 192 N. Y. 193 (84 N. E. 809), it was said: "The necessity for a uniform law throughout the State was apparent, and the motor-vehicle law was clearly designed as a new, complete, and general enactment to take the place of all previous statutes, ordinances, or rules relating to the use of the streets and highways by motor-vehicles. The purpose . . in enacting such law is shown in the clear and unmistakable language used. We think the ordinance is a plain attempt to avoid the provisions of the motor-vehicle law. . . Very little weight can be given to the fact that it is called a 'tax' instead of a 'license.'" See also City of Lincoln *v.* Dehner, 268 Ill. 175 (108 N. E. 991); State *v.* Caplan, 100 Vt. 140 (135 Atl. 705). That the State, at least to the extent to which section 18 ·of the motor-carriers act goes, has a right of control over streets and street traffic, there can be no doubt. It was a legitimate exercise of a part of the sovereign power of the State, and the municipal authorities must yield to the legislative power. Detailed regulations of the use of the streets of

a municipality and many particular uses are left by the legislature to the municipal authorities, and the State laws are silent in regard to such regulations; but the inactivity of the legislature and its silence as to many of these matters does not mean that in the exercise of the sovereignty of the State it may not assume control of the streets or municipalities and the use to which they may be put. Touching many of the matters relating to streets the legislature may be silent for a long time; but silence is not surrender of its power. Without taking up all the provisions and features of this ordinance and the terms used in the ordinance and the precise meaning of each, we are satisfied that the ordinance is invalid because in contravention of the section of the motor common-carriers act set forth above.

■ In the demurrer to the petition section 18 of the act of August 27, 1931, is itself attacked on the ground that it is unconstitutional and void. This is the contention of the City of Albany. The court is of the opinion that it is not unconstitutional upon any of the grounds taken in the demurrer. One ground is that it violates article 3, section 7, paragraph 8, of the constitution of this State (Code, § 6437), which declares that "No law or ordinance shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof." Section 18 is not subject to this criticism, and is not rendered subject to it by the provision which declares that "No subdivision of this State, including cities, municipalities, villages, townships, or counties, shall levy any excise, license, or occupation tax of any nature on said equipment, or the right to operate said equipment or any incidents of said motor-carrier business, or on a motor common carrier." This provision is germane to the general purpose of the act as indicated by its caption, and does not introduce a new subject-matter. The caption is as follows: "An act to prescribe conditions and regulations under which common carriers by motor-vehicles are permitted to operate upon highways in this State, to regulate the business of common carriers for hire by motor-vehicles operated over the highways of this State, and the use of vehicles therein; to define 'motor common carriers;' to give the Georgia Public Service Commission jurisdiction and regulatory powers over said carriers and said business and vehicles used in said business; to authorize railroad companies to operate motor-vehicles on the high-

ways and to own stock in corporations organized or operating as motor-carriers; to make provisions as to service of notice and process on such motor common carriers; to make provisions as to venue of actions against them; to make provisions as to the fees to be paid for certificates, registrations, and for permits; to make provisions for the enforcement of this act and rules and regulations made under its authority; to provide for the punishment for violations of this act and the rules and regulations made under its authority; to authorize injunction suits against such motor-carriers to prevent operations in violation of law or rules and regulations made under authority of law; to provide for the keeping of records and the making of reports by such carriers; to protect the public as to the operation of such carriers; to make the provisions of this act supersede prior laws on the same subject; and for other purposes."

A reading of this caption will show that the part of section 18 quoted above is germane to the general purpose as indicated by the title of this act. In the very beginning of the caption the act is defined as one to prescribe conditions and regulations under which common carriers by motor-vehicles are permitted to operate upon the highways in this State, to regulate the business of common carriers for hire by motor-vehicles operated over the highways of this State, and the use of vehicles therein, etc. A reading of this part of the caption seems to us to demonstrate that the alleged objectionable matter in section 18 is not variant from the general purpose of the act, and is not matter different from what is expressed in the title thereof. "This clause of the constitution 'does not require that the title should contain a synopsis of the law, but that the act should contain no matter variant from the title.' *Martin* v. *Broach*, 6 *Ga.* 21 [50 Am. D. 306]. The general object of the law is all that need be indicated by the title. To go further and require every end and means necessary or convenient for the accomplishment of this general object to be enumerated in the title would go beyond the purpose of the authors of this clause. . None of the decisions made by our courts ever went further than to require that it would be sufficient 'if the title was descriptive generally of the purpose of the act, and that it was not necessary that it should particularize the several provisions contained in the body of the act.' All that was essential to its validity was that it should not contain matter 'different from what is expressed in the title.'" *Howell* v.

*State,* 71 *Ga.* 224 (51 Am. R. 259). If what we have said above announces a correct conclusion, then it is manifest that the statute does not refer to more than one subject-matter.

■ ■ The rulings stated in the third and fourth headnotes require no elaboration. The foregoing rulings are controlling in both of the cases. The court did not err in granting the injunction. *Judgment affirmed. All the Justices concur.*