### 25120. WRIGHT *v.* THE STATE.

372

Decided May 27, 1936.

*Feagin & Feagin,* for plaintiff in error.

*C. S. Baldwin Jr., solicitor-general,* contra.

MacIntyre, J. The defendant T. G. Wright was jointly indicted with others, the indictment charging them with a felony, to wit, the violation of the Georgia-securities-commission act. The defendant demurred to the indictment, the judge overruled all grounds of the demurrer, and the defendant excepted. The only question for decision by this court is whether or not the judge erred in overruling the demurrer.

■ Ground 1 of the demurrer objects to the form of the indictment in that it does not specifically number each count thereof; the ground avers that the counts in the indictment should be numbered consecutively in like manner as paragraphs in petitions of civil suits. Code of 1933, § 81-103. However, when we look to the Code of 1933, § 27-701, we find that this section not only states when an indictment shall be sufficiently technical and correct, but also gives the form for every indictment whether in one count or more than one count, and the form for more than one count, as given, does not specifically number the counts. As the instant indictment in this regard follows the form prescribed by this Code section, we do not think ground 1 of the demurrer is good. See also in this connection Bishop's Directions & Forms (2nd ed.), 31, § 64; 4 Wharton's Criminal Procedure, 48, §§ 79-87. However, we think it preferable to follow the practice of con-

secutively numbering the counts of the indictment as is generally done by the solicitors-general of this State.

The first count of the indictment, omitting the formal parts, alleges: "did unlawfully sell and offer for sale certain securities to wit: 25 shares of the capital stock of Franklin Savings and Loan Co., of Macon, Georgia, stock certificate number 896, said securities being sold and offered for sale to Mr. and Mrs. W. D. Giles for the sum of $500, without said accused having first secured a license so to do from the secretary of State in accordance with the provisions of the Georgia-securities-commission law, said accused then and there acting as *dealer* [italics ours] in said securities, said securities so sold and offered for sale coming within class D as defined in the Georgia securities law, contrary to the laws of said State," etc.

The second count charged the sale of the same stock while acting as *issuer* [italics ours] without having first secured a license. The third count charged the sale of the same stock while acting as *broker* [italics ours] without having first secured a license. The fourth count charges the sale of the same stock while acting as *agent* [italics ours] without a license having first issued.

Grounds 2, 3, 4, 5, 6, and 7 of the demurrer all go to the different counts in the indictment. These grounds of the demurrer in effect attack each count of the indictment, and say that the securities alleged to have been sold are alleged to come within class D, but no facts are set forth to show that they do come in class D; that if the charge is selling class D stock without a license, the indictment must clearly negative that it is class A, B, or C stock; that if it could be A, B, or C class security, then no crime is charged of selling class D security; that section 97-102 of the Code, in defining "dealer" expressly excepts a salesman from the classification of a dealer, and that the allegations in the indictment are consistent with the assumption that the defendant was merely acting as a salesman, and that the indictment should negative the fact that the accused was merely a salesman, and that the bald opinionative statement that he was a "dealer" is a mere conclusion of the pleader; that the allegation that the defendant was acting as "dealer" is a mere conclusion; that no facts are given to show who owned the stock,

or for whom the defendant was acting as "dealer," whether for himself or for some one else, for if the stock was the property of the accused, it would be beyond the power of the legislature to make criminal the sale in a single instance of the stock which was the property of the accused, unless he first obtained a license; and that the indictment is too vague, indefinite and incomplete to charge any crime, or to put the defendant on notice with what he is charged.

The Code, § 97-301, enumerates the classes of securities covered by the Georgia-securities-commission act and divides them into four classes, to wit: class A, class B, class C and class D. Thereafter, class A is defined, then class B, and then class C, and finally class D securities are defined as "all securities other than those falling within classes A, B and C respectively." § 97-305.

We think the allegations in the indictment that 25 shares of the capital stock of the Franklin Savings & Loan Company of Macon, Georgia, stock certificate No. 896, were securities coming within class D, as defined in the Georgia securities law, are allegations of fact, and not mere bald opinionative statements. The transaction was individualized to such an extent that the accused was, with reasonable certainty, apprised by the indictment of the nature of the accusation against him to the end that he would be able to prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. The offense charged is purely statutory, and the indictment is in the language of the Code, and goes further and accurately describes the stock certificate alleged to have been sold.

"In any suit, complaint, information, indictment, or other writ or proceeding, civil or criminal, laid or brought under the Georgia securities law, it shall not be necessary to negative any of the exemptions provided by this law; and the burden of proof of any such exemption claimed by the defendant shall be upon the defendant." Code, § 97-105 (Acts 1922, p. 171). Under this section we do not think it is necessary to allege in the indictment that the dealer was a "person other than a salesman." The allegation that the securities come within class D, as defined in the Georgia security law, necessarily excludes securities in classes A, B, and C, and is a sufficient negative that the stock was class A, B, or C. State v. Montgomery, 92 Me. 433, 435 (43 Atl. 13).

Ground 8 of the demurrer as stated in the brief of counsel for the plaintiff in error is: "The act of 1933, pp. 263-266, can not lawfully penalize a broker and an agent for selling securities without a license, because the caption of the act only provides for the licensing and punishment of dealers and issuers of stock and their agents. It does not provide for the punishment of brokers or agents generally, but only for the agents of issuers and dealers. Clearly for the legislature to broaden the body of the act and to include therein brokers and agents generally violates par. 8, sec. 7 of art. 3 of the constitution of Georgia, which declares: 'No law or ordinance shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof.' Section 36 of said act of 1933 undertakes to add to the caption of the act by making penal the sale or offering for sale of securities in class D without license, on the part of any broker, solicitor, agent (generally) or other person, thus making the body of the act much broader than the caption of the act, which only deals with issuers and dealers and the agents of issuers and dealers. It is not alleged in unnumbered paragraph 4 of the indictment that the defendant was the agent of any issuer or dealer nor what issuer or dealer and it would be necessary to so allege before this paragraph could state any offense. On the contrary the 1st and 2nd paragraphs charge the defendant with being a dealer or an issuer and at the same time an agent for an issuer or a dealer."

The caption of the act of 1933, p. 263, is as follows: "An act to amend an act approved August 17, 1920, entitled 'An act to create and establish the Securities Commission, to provide the membership of said commission, and define the duties and powers thereof, to define and classify securities and *regulate the sale thereof, to provide for the license of dealers in securities* [italics ours] and their agents, to fix fees therefor, to provide a penalty for the violation of this act; and for other purposes;' as amended by an act approved August 31, 1922, and also by the act to simplify the operation of the Executive branch of the State Government by abolishing certain offices, etc., approved August 28, 1931, wherein the secretary of State was made sole securities commissioner of the State; so as to substitute the words 'Secretary of State' for the words 'Securities Commission' or 'commission'

wherever said words occur in said acts of 1920 and 1922; and to provide for the licensing of dealers and issuers, and of their agents, engaged in the business of selling or offering for sale securities in classes A, C, and D, or securities in either of said classes; to enlarge the powers of the secretary of State; to provide penalties for the unlicensed sale, or offer to sell, by any such dealer or issuer or agent thereof, of securities in said classes, or of securities in either of said classes; and for other purposes." Section 36 (Code, § 97-9905) declares as follows: "Any issuer, dealer, broker, solicitor, agent, or other person, who shall sell or offer for sale in this State any security in class 'D,' as defined in this act, . . without having first secured a license so to do from the secretary of State in accordance with the provisions of this act, except as otherwise expressly exempted herein, shall be guilty of a felony." Referring to that part of our constitution which states that no law shall pass which contains matter different from what is expressed in the title thereof, our Supreme Court in *Howell* v. *State, 71 Ga. 224 (51 Am. R. 259)*, said: "The constitution does not require that the title of an act should contain a synopsis of the law, but that the act should contain no matter variant from the title. If the title is descriptive generally of the purposes of the act, it is sufficient, and it is not necessary that it should particularize the several provisions contained in the body of the act." By the language employed in the caption of this act it is indicated that provision is made in the act, not only for "dealers engaged in the business of selling or offering for sale securities in class A, C and D," but also for "[other] dealers in securities;" and the act itself defines "dealers" and "issuers." As used in the title, and as explained in the act itself, the word "dealer" because of the purpose of the act, and the language thereof, at least covers any person offering, buying, or selling, or otherwise dealing or trading in stocks as agent or broker. For section 3 of the act says every person is a dealer (except those exempted by the act) "who in this State engages . . directly or through an agent in the business of selling securities issued by another person or purchasing or otherwise acquiring such securities from another for the purpose of reselling them, or offering them for sale to the public [or even if the person is not engaged in the business as just stated, or is not the agent

of such a person, yet is] offering, buying, selling, or otherwise dealing or trading in securities as agent." Such a described person is a dealer under section 3 of the act. Therefore, when section 36 of the act of 1933 makes it a felony for any issuer, dealer, broker, or agent to sell or offer for sale in this State any security in class D as defined in this act, without having first secured a license so to do from the secretary of State in accordance with the provision of this act, except as otherwise expressly exempted herein, it does not contain matter different from what is expressed in the caption. *Felton* v. *Highlands Hotel Co.,* 165 *Ga.* 598, 618 (141 S. E. 793, 57 A. L. R. 987); *City of Albany* v. *Ader,* 176 *Ga.* 391 (168 S. E. 1).

The case of *Smith* v. *State,* 161 *Ga.* 103 (129 S. E. 766), is differentiated from the present case, in that the body of the amendatory act of 1922 was under discussion in the former, and contained matter not only not referred to in the caption, but contrary to and in direct opposition to the matter referred to in its title, whereas in the present case, the caption of the amendatory act of 1933 contains no such restrictions in its caption as did the act of 1922, but it would seem was an amendatory act passed for the purpose of remedying the contradiction which appeared in the act of 1922.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*